THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRIDE MOBILITY PRODUCTS CORP. : | |
| : | |
| Plaintiff : | |
| v. : | 3:13-CV-452 |
| : | (JUDGE MARIANI) |
| COMFORT MEDICAL SUPPLY, LLC, : | |
| CRAIG DALEY, and LARA COPELLO : | |
| : | |
| Defendants : | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendant Daley's Motion to Dismiss, and in the alternative, Motion for Summary Judgment. (Doc. 4). For the reasons set forth below, the Court will deny the motion.

### II. Factual Allegations and Procedural History

Plaintiff Pride Mobility Products ("Pride") is a Pennsylvania corporation that "engages in the manufacturing and distribution of mobility products including scooters and lift chairs." (Complaint ("Compl."), Doc. 1, Ex. A, ¶¶ 1-2). Defendant Comfort Medical Supply ("CMS") is a Florida limited liability company with three members and principals, two of whom include Defendant Daley and Defendant Copello (who are husband and wife). (*Id.* at ¶¶ 3-4). For years, Pride supplied CMS with mobility products and in 2006, CMS and its principals "applied for and received a credit account from Pride Mobility for the purchase of

equipment which obligated CMS to make prompt payment when due as indicated on each invoice." (*Id.* at ¶¶ 5-8; *see also* Exs. A, B to Compl.).

In addition, CMS also entered an Inventory Financing Security Agreement with Pride in December 2006 "wherein CMS agreed to give Pride Mobility an all asset security interest in exchange for the extension of credit by Pride for purchase of Pride products." (*Id.* at ¶ 9, *see also* Ex. C to Compl.). "In 2007, Pride filed a UCC relative to the security interest given in the 2006 Inventory Financing Security Agreement as well as a Continuation in 2012." (*Id.* at ¶ 10; *see also* Ex. D to Compl.).

"Also in December 2006, Defendants Craig Daley and Lara Copello executed a blanket Guaranty and Suretyship Agreement wherein each unconditionally guaranteed to Pride:"

> . . . the prompt and punctual payment of all sums due from Debtor [CMS] to Pride, as well as any and all damages including collection fees and all legal expenses that may arise in consequence of the failure of Debtor to make such payments when due. . . . Guarantor acknowledges that this Guaranty and Suretyship applies to any and all debts existing as of the date of this Agreement from Debtor to Pride, any and all debts about to be incurred by Debtor in favor of Pride reasonably contemporaneous with the execution of this Agreement, and any and all debts arising out of the sale of products from Pride to Debtor as aforereferenced.

(*Id.* at ¶ 11; *see also* Ex. E to Compl.). As of December 13, 2012, CMS had "a total outstanding accounts receivables balance of $784,348.59 for products ordered and received on the credit account including a finance charge of $15,918.22." (*Id.* at ¶ 14; *see also* Ex. G to Compl.).

Count I of Plaintiff's Complaint alleges a breach of contract claim against CMS, Count II alleges an unjust enrichment claim against CMS, and Count III alleges a breach of personal guaranty agreement claim against Defendants Daley and Copello. Defendant Daley's Motion to Dismiss (Doc. 4) seeks dismissal of Count III against him.

In support of his motion, Defendant Daley attaches three exhibits which purportedly prove that the December 2006 Personal Guaranty was no longer in force and had been superseded by new agreements in 2008 and 2012. (*See* Doc. 13, Exs. 2-4). Defendant Daley avers that by 2008, the parties "virtually stopped doing business except for ordering replacement parts." (Doc. 13 at 4). In a letter dated January 31, 2008, "Daley told Pride that Comfort Medical would resume ordering product from Pride, but only if Pride terminated all obligations under the 2006 Personal Guaranty." (*Id.*; *see also* Ex. 2 to Doc. 13). Daley's terms were "NOT subject to negotiation." (Ex. 2 to Doc. 13). Daley states that Pride agreed to these terms and that on October 22, 2012, the parties "renegotiated the terms of a new credit account titled, 'Restructure/payment Agreement,'" which omitted any mention of personal guaranties[1] by Daley. (Doc. 13 at 4; *see also* Exs. 3 and 4 to Doc. 13).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[1] The Complaint states that Defendant Daley signed a Personal Guaranty in 2004 on behalf of Southeast Mobility Group LLC. (Compl. at ¶ 13). Defendant Daley construed this allegation as a partial basis for Count III of Plaintiff's Complaint, but Plaintiff argues that the reference to the 2004 guaranty on behalf of a non-party was purely for background purposes and forms no part of Count III. As such, the Court will not address this portion of Defendant Daley's motion to dismiss as it is moot.

3

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97, n.6 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)). However, "a limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *Id.* (internal citations and quotation marks omitted). If the Court relies on "matters outside the pleadings," it must convert a motion to dismiss into a motion for summary judgment (FED. R. CIV. P. 12(d)) and "provide notice of its intention to convert the motion and allow an opportunity to submit materials admissible in a summary judgment proceeding." *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 272 (3d Cir. 2013).

### IV. Analysis

<u>Defendant Daley</u>

Defendant Daley argues that the December 2006 Personal Guaranty clearly applies to debts occurring prior to the date of execution or incurred "reasonably contemporaneous"

with the Guaranty, and that all of the outstanding debts that Pride seeks to recover were incurred in July 2011 and afterwards. The Personal Guaranty states:

> Guarantor acknowledges that this Guaranty and Suretyship applies to any and all debts existing as of the date of this Agreement from Debtor to Pride, any and all debts about to be incurred by Debtor in favor of Pride reasonably contemporaneous with the execution of this Agreement, and any and all debts arising out of the sale of products from Pride to Debtor as aforereferenced.

(Ex. E to Compl.). Daley posits that the language of the December 2006 Personal Guaranty is clear and unambiguous and to the extent that it is ambiguous, the Guaranty should be construed against Pride, the drafter of the contract. Judge Caputo rejected this argument in *Pride Mobility Products Corp. v. Mobility Products Unlimited LLC*, a case involving the same plaintiff and precisely the same language in that personal guaranty.

> In the instant case, the Court finds that the language in the Guaranty and Suretyship Agreements signed by the individual defendants was clear. Under those agreements, the defendants were guaranteeing "all sums due" from MPU to Pride. This amount is later clarified in the agreement as all debts "existing as of the date of this Agreement," all debts "reasonably contemporaneous with the execution of this Agreement," and all debts "arising out of the sale of products . . . as aforereferenced." These aforementioned sales are clearly referring to the future sales intended to be induced by the suretyship agreements signed by defendants. Therefore, the Guaranty and Suretyship Agreements signed by the individual defendants clearly and unambiguously cover debts owed before the contract was signed, as the contract was signed, and debts occurred at some point after the contract was signed.
>
> Defendants MPU and the Wards have spent much of their briefs arguing that the "reasonably contemporaneous" language suggests that the Agreements were signed in contemplation of the 2006 Note between Pride and MPU, thereby precluding Plaintiff from arguing that the Agreement applies to future debts. *Defendants completely ignore the clause immediately following the "reasonably contemporaneous" language, which applies the Agreement to the*

6

> *future sales expected to be induced by the suretyship relationship. The Agreement is clearly not limited only to debts incurred concurrently with the signing of the contract.*

No. 3:08-CV-231, 2009 WL 3366550, at *5 (M.D. Pa. Oct. 16, 2009) (emphasis added). The undersigned agrees with Judge Caputo's reasoning and analysis and will not adopt Defendant Daley's proffered interpretation.

In the alternative, Defendant Daley argues that his January 31, 2008 letter to Pride and the October 22, 2012 Restructure/payment Agreement constituted novations of the December 2006 Personal Guaranty between Pride and himself. Nevertheless, assuming the Court can rely on these extrinsic documents in support of Defendant's motion, Plaintiff disputes the evidence offered by Defendant Daley. Plaintiff points out that Daley's documents do not show what Pride's response was to his January 31, 2008 letter. Simply showing that the parties continued to do business after Daley sent the letter does not prove that Pride accepted Daley's terms without reservation.

Furthermore, the omission of any reference to Personal Guaranties in the October 22, 2012 Restructure/payment Agreement does not necessarily prove that the Personal Guaranties were no longer in force, and Pride should be permitted an opportunity to counter Defendant Daley's evidence. Also, even if the October 2012 Restructure/payment Agreement did constitute a novation that superseded the December 2006 Personal Guaranty, Daley would still be responsible for liabilities CMS incurred to Pride prior to the 2012 Agreement (assuming the January 2008 "agreement" did not constitute a novation).

7

The documents Daley attaches to his Motion to Dismiss certainly raise questions as to the continued applicability of the December 2006 Personal Guaranty with respect to him after 2008, but these questions raise genuine issues of material fact as to what Pride's response was to Daley's January 2008 that would preclude the entry of summary judgment in Daley's favor.

At this time, the Court is without sufficient information to know whether, as a matter of law, Daley's December 2006 Personal Guaranty remained in force after his January 2008 demand letter and the parties' October 2012 Agreement. As such, the Court will deny Daley's Motion to Dismiss, and in the alternative, Motion for Summary Judgment. (Doc. 4).

## V. Conclusion

For the foregoing reasons, the Court will deny Defendant Daley's Motion to Dismiss and in the alternative, Motion for Summary Judgment. (Doc. 4). A separate Order follows.

Robert D. Mariani
United States District Judge

8